v. Larry, Wilson, Hensley, and others. The party is not to receive 15 minutes per side. Thank you. I'd like to reserve five minutes for rebuttal, please. All right. This is really a fairly simple issue case, although the law in Kentucky seems to be in flux with regard to what I believe is the main issue in this case, the doctrine of equitable subrogation. It is an equitable doctrine, which requires some degree of fact-finding by the court, and it's our position that Judge Scott, at the bankruptcy court level, really kind of dismissed the equitable subrogation argument. He relied on the statute of limitations, defense to our reformation claim, and as an afterthought said, well, equitable subrogation doesn't apply because they didn't include the property in the description. Well, what's wrong with that? That's the usual concept of subrogation, isn't it? Well, subrogation doesn't even require there to be a document, Your Honor. The doctrine is if someone pays another obligation, an obligation owed by a borrower, they step into the shoes of the obligee. There's nothing that says there needs to be a document to be subrogated to those rights. Why aren't you really arguing backdoor reformation? No, I'm not. It's a totally separate legal argument, Your Honor. I've argued subrogation cases typically in a priority of lien situation where someone will miss a mortgage when they're examining the title. A new mortgage goes in place that thinks it's going to be a prior mortgage, and that is typically the situation in which it arises. You've got a perfectly good mortgage document. You're not needing to reform it. What you're trying to do is reorder priority. In this case, the problem you've got is you've got an ambiguous mortgage document. It contains the address 1055. It contains the legal description for 1083. What's ambiguous about that? Pardon? You don't have a legal description. Well, Kentucky doesn't. But you have it for the other one. Kentucky doesn't require there to be a legal description. It merely requires that the mortgage sufficiently identify the property that somebody can determine which property it is. Here, in the complaint filed by the debtors in the adversary proceeding, they allege that the mortgage is superficially ambiguous because it contains both information. Sounds like an argument for reformation to me. Well, that portion of it is. There certainly is a reformation argument, which then gets us to the statute of limitations issue. But the equitable subrogation, there's no denying that we paid off the existing mortgage that encumbered both properties. And under the plain, simple doctrine of equitable subrogation, we are subrogated to that, whether we have a mortgage against either property. We paid that obligation. We have the ability to step into the shoes of that mortgage holder. And for the court to basically, the bankruptcy court to basically dismiss that claim, merely by saying we failed to include the legal description for that property in our mortgage, misses the point of what equitable subrogation is all about. It is an equitable doctrine that substitutes us into the prior lien holder's shoes. So we think that Judge Scott's decision on that is clearly erroneous. Judge Caldwell, in her opinion, basically just rubber-stamped what Judge Scott had said, used his language. We think she was incorrect as well. They both seem to be focused primarily on the reformation claim and the statute of limitations issue. On the statute of limitations issue, at a starting point, our original complaint in the Estill Circuit Court, and I think we need to start there in the Estill Circuit Court, contained a claim that we had a mortgage on 1055. 1055 is the omitted piece of property. The 1083 legal description is contained in the mortgage. So from the get-go, we were claiming we had a lien against 1055. It is only when the borrowers raised as a defense in their action that we didn't have a mortgage on that piece of property, that associates became aware that there was a potential issue with their mortgage and sought reformation of that document. They also sought equitable subrogation in the state court proceeding. The motion to amend was filed in September. The court granted that motion in October, and the defendants filed their first answer to the First Amendment complaint. They didn't raise a statute of limitations defense at that time period. Let's try a hypothetical. Okay, Your Honor. Let's assume that the evidence is uncontroverted, that the bank never intended to have a lien on that second property. Let's assume that happened. Under your theory, you nevertheless would have a lien on that property because you paid it off. Isn't that an absurd result? I'm not sure that's necessarily what I'm arguing, Your Honor. Well, I know you're not arguing it. I'm just trying to figure out. We have some burden to show that from an equitable standpoint, we should be put in that position. If we voluntarily paid off an obligation with no intent to have a lien, equitable subrogation isn't going to save us. We're out at that point. But clearly, the evidence in this case, we believe, established that we were intended to have a lien against both properties. Appraisals done on both properties, the loan-to-value ratio is based on both properties. We paid off a mortgage that encumbered both properties. So we think the evidence was overwhelming, none of which really entered into Judge Scott's decision because he relied principally on the statute of limitations defense. But moving back to the statute of limitations defense, the defendants filed two separate answers in the state court proceeding, neither one of which, some of which raised affirmative defenses, neither one of which ever made it in the statute of limitations defense. The case law that we've cited does indicate, the older case law, that there is some discretion in the court to allow an amendment, but they never sought an amendment in the state court proceeding, even to the point where another lien holder had obtained a judgment, the property was going to be sold, the property referred to the master commissioner for sale, had been advertised, had been appraised. At that point, they filed their bankruptcy proceeding in an attempt to restart litigation by filing this advertisement. Is there a difference that the state court action was never concluded? There's no ruling on the merits? I don't think so, because I think if they had attempted to amend their pleading in the state court, the most recent decision, the unpublished opinion that we've included, the postal sales enterprises case, makes clear that a judge doesn't have the ability to allow an amendment. There seems to be some confusion in Judge Scott and Judge Caldwell about the time period in that case. It was a 41-day time period from the time they filed their first answer to the time they sought amendment to file a second. We've got a six-month period in this case in which they didn't do it, and the Court of Appeals said they've waived it. That's what the affirmative defense statute says. If you don't raise it, you waive it. The court doesn't have discretion at that point. So the fact that it had proceeded to at least judgment for one lien holder I think is one more reason that the Estill Circuit Court judge would not have allowed them to amend. And what they've essentially done by filing the AP is amending without leave of court by raising a statute of limitations defense from the get-go in that case. But we also think that even if the statute of limitations could have been raised, it's the 10-year statute because it's self-evident that we thought we had a mortgage on both pieces of property because we claimed a lien on both pieces of property in the initial foreclosure proceeding. But you never alleged that. Pardon, Your Honor? You never alleged that you couldn't discover. No, we never alleged. That is true that we couldn't discover, but I think it's self-evident that we thought we had both and that it was only as a result of the defendant alleging it that it became an issue in the case and that our amended complaint because it merely fleshes out our claim of lien against both pieces of property relates back to the initial complaint. So we think that the court was in error in not seeing that it related back and that Judge Caldwell obviously followed Judge Scott on that issue as well. I'd be happy to answer any other questions that the court might have in regard to this. Apparently not. Thank you. May it please the court, I'm Lois Renfrow Morris appearing for Mrs. Hensley. Mr. Hensley having passed away after filing the bankruptcy. Your Honor, Mr. and Mrs. Hensley's position that equitable subrogation was not a proper doctrine under this case. The court in Kentucky has consistently applied the equitable subrogation doctrine to protect a lien holder against an intervening lien holder. Not one case cited by associates was lien holder versus land owner. In fact, Wells Fargo, which is one of the cases relied on by associates, quotes a Colorado case, Hicks versus Landry, to say that the doctrine allows a later filed lien holder to leave Prague over an intervening lien and take a priority position. The whole purpose of the doctrine is to prevent unjust enrichment and to allow this doctrine to be applied to a land owner versus a lien holder is to in effect allow the lien holder to be unjustly enriched, which is quite the opposite purpose of the doctrine. It would enable a lien holder at any time to assert there was a previous mortgage, therefore we have their rights, we like their rights better. It would basically take away the right of a land owner to refinance a mortgage at better terms. It would throw the law of contracts out the window as far as refinancing mortgages is concerned. It is clear that that was never the intent of the Kentucky courts in adopting this doctrine. The purpose of the doctrine is to prevent unjust enrichment and to allow it in these circumstances is to reward a party for its own negligence and to allow it to be enriched because of its own negligence. As to the statute of limitations, we take the position that the five-year statute of limitations applies. In Kentucky, it is the burden of the party asserting mistake in a contract for reformation to both plead and approve that the mistake could not have been discovered within the five-year period. And that simply is not the case here. If there was a mistake, which my clients do not acknowledge, it was plain on the face of the mortgage. It should have been discovered five seconds after execution, let alone not be discovered within five years. The reality is that it is clear that under Madison County v. Arnett, which interprets KRS 413.133, the 10-year exception statute, that the associates did not meet their burden. The burden was on them to assert it. They didn't assert it and they could not possibly prove they could not have discovered the error. The associates then asserts that Mr. and Mrs. Hensley waived the limitations defense. They did not plead it in the circuit court case. However, the case was taken to bankruptcy court and it was asserted in the adversary proceeding. It is important to note that under Kentucky law, it is to be freely given to a party the right to amend his or her pleadings to assert affirmative defenses. And under Civil Rule 15.01 of the Kentucky rules, which is analogous to 15A in the federal rules, they are entitled to amend the pleading. In fact, the case of Wyrick v. Wyrick is directly on point and states that a defendant may amend his answer at any time before judgment to plead limitation. Postal Enterprises is not the same situation as here. In Postal Enterprises, a default judgment had been entered. It was set aside and the court allowed them to amend, excuse me, to file an answer. They still did not assert an answer. That case is clearly distinguishable from Wyrick, which is applicable here. It is our position that associates was not entitled to judgment in any way, shape, or form and that both the Bankruptcy Court and the Eastern District of Kentucky Court were correct in their decisions. If you have any questions, Your Honor? Apparently none. Thank you, Your Honor. Thank you. May it please the Court, I just have a couple of comments. It is interesting that counsel used the term negligent, which leads me to believe that there is an understanding here. There is clearly a defense, but there is an understanding that both of these properties were supposed to be encumbered by this mortgage. The unjust enrichment action is this debtor is going to end up with a piece of unencumbered property that was supposed to be encumbered, and that is what the doctrine of equitable subrogation is all about. It is there to prevent a situation of unjust enrichment. I mean, at the same time, you know, banks have to take elementary steps to protect themselves so that we do not have litigation in federal court for a lengthy period of time when they just fail to see something. You are correct, but the body of law has developed in an attempt to protect the parties one way or another from being unjustly enriched. In this particular instance, the Hensleys get a piece of property free and clear because they borrowed money from a lender who only included one of two pieces of property it was supposed to have on the mortgage. The court did not engage in any kind of weighing of who should win in this particular instance. The court merely said, and that is what equitable subrogation is about. There are good societal incentive-based reasons to make the party that was, you know, derelict bear the cost so that next time they are more careful. Except that Kentucky has gone the other way. Yeah, that is a good point. In reordering priorities, they have said the doctrine allows what should have happened to happen, and that is all we ask, and the bankruptcy court did not address that issue. The court ignored any analysis of equitable subrogation, and we think that is what the error is, that the court had to engage in an analysis of who is prejudiced, who is unjustly enriched, and it simply did not do it. It just relied on the fact that the description was not contained in the mortgage, and that is the be-all, end-all reason why equitable subrogation did not apply. Well, that is, we would not even be making an argument for equitable subrogation if the legal description was in there. You would not have to make the argument for equitable subrogation. So it is kind of an Ipsy Dixit. This is, since the mortgage does not include the description, we are not even going to consider equitable subrogation. And that was the entire basis of the bankruptcy court's ruling. So we just ask that if equitable subrogation is going to be dismissed, there needs to be a factual analysis, and that is what the bankruptcy court failed to do in this case. Thank you, Your Honor. Thank you very much.